**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-01580-WJM-MJW

MARK A. BEYER,

    Plaintiff,

v.

CAMEX EQUIPMENT SALES & RENTALS, INC.,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION**

---

THIS MATTER is before the Court on Defendant Camex Equipment Sales & Rentals, Inc.'s ("Camex") Motion to Quash Service of Process and to Dismiss for Lack of Personal Jurisdiction ("Motion"). (ECF No. 3.) For the reasons set forth below, this Motion is GRANTED.

### INTRODUCTION

This is a personal injury case whereby Plaintiff Mark Beyer ("Beyer") received injuries after falling underneath a moving bed truck manufactured and sold by Camex to Beyer's employer for drilling rig moves. Beyer asserts three claims for relief: (1) strict product liability; (2) manufacturer's liability based on negligence; and (3) negligence. Camex moves to dismiss the action based on a lack of personal jurisdiction. The parties have fully briefed the Motion and it is now ripe for disposition.

## BACKGROUND

Camex is a Canadian corporation with its principal place of business in Nisku, Alberta, Canada.  (Case Aff., ECF No. 3-1 at ¶ 2.)  Camex has two facilities, both located in Nisku.  (*Id.*)  Camex provides equipment to the oilfield industry through the sale and lease of new, used, and consigned equipment.  (Compl., ECF No. 1-1 at ¶ 5-6.)

On April 24, 2007, Camex sold a 2007 Kenworth 400" bed truck to Xtreme Oilfield Trucking, Inc. ("Xtreme") for $442,000.  (Bill of Sale, ECF No. 3-2.)  The bed truck was initially manufactured by Kenworth, then modified by Camex for use in an oilfield.  (ECF No. 1-1 at ¶ 7.)  According to Beyer, Camex advertises its bed trucks as setting the standard for performance, comfort, and reliability in the oilfield market.  (*Id.*)  Beyer further alleges that Camex specializes in rigging beds to Kenworth trucks for the highest quality product and craftsmanship.  (*Id.*)

Xtreme is a Wyoming corporation with its principal place of business in Cheyenne, Wyoming.  (ECF No. 1-1 at ¶ 8.)  Xtreme's business consists of heavy haul transfers of oil field drilling equipment, oil rigs, tubing and pumps related to the oil field industry.  (Colo. Admin. Order, ECF No. 12-1 at 3 ¶ 2.)  At the time Xtreme purchased the bed truck, it had two oil drilling rigs in Colorado, two in Wyoming, and two in Canada.  (ECF No. 12 at 3.)  Xtreme also sought opportunities to complete rig moves for other oil field companies.  (ECF No. 12-1 at 2 ¶ 4.)  Beyer alleges that the bed truck was purchased with the intent that it would assist in moving drilling rigs both within and outside the State of Wyoming.  (ECF No. 12 at 7.)

Beyer, a Wyoming resident, began working for Xtreme in May 2007.  (ECF Nos. 12 at 2; 12-1 at 2 ¶ 1.)  Beyer was hired as a "swamper," which entailed assisting the driver of the truck during rig moves.  (ECF No. 1-1 at ¶ 8.)  Beyer's tasks included mounting and/or loading parts of a disassembled drilling rig onto the bed of a truck for transfer to a new location.  (ECF No. 1-1 at ¶ 11.)  Beyer would then unload the parts at the new location and return to the original location for more equipment until the transfer was complete.  (*Id.*)  Beyer was to assist in moving rigs in Wyoming, Colorado, and possible other locations.  (ECF No. 12 at 2.)  During the first 10 days of his employment with Xtreme, Beyer assisted in moving a rig from Rifle, Colorado, to Casper, Wyoming, and moving a rig outside Platteville, Colorado.  (ECF No. 12-1 at ¶ 5.)

On June 2, 2007, while Beyer was at work moving the drilling rig near Platteville, in Weld County, he unsuccessfully attempted to mount the bed truck during transport.  (ECF No. 1-1 at ¶ 3.)  Beyer had not sat inside the passenger compartment during the rig move that day.  (*Id.* at 11.)  Beyer alleges that in the pressure of the rig move, the truck driver was impatient to start and therefore began driving away before Beyer could secure a position on the bed truck.  (*Id.* at ¶ 12.)  Beyer fell underneath the bed truck and suffered severe injuries primarily to his left leg, hip, and spinal column.  (ECF No. 12 at 2.)  Beyer was airlifted to North Colorado Medical Center for surgery and treatment.  (ECF No. 12-1 at ¶ 6.)  He then was moved to Wyoming for further care.  (ECF No. 12 at 2.)

Beyer commenced this lawsuit against Camex on June 2, 2010 in the District Court for Weld County, State of Colorado.  (ECF No. 1-1.)  Camex removed the matter

to this Court on July 2, 2010. (Notice of Removal, ECF No. 1 at 4.) On July 2, 2010, Camex further filed a Motion to Quash Service of Process and to Dismiss for Lack of Personal Jurisdiction. (ECF No. 3.) On September 10, 2010, Camex waived service of process, leaving only the matter of personal jurisdiction for the Court to address. (ECF No. 13 at 1.) Notably, Beyer failed to conduct *any* discovery on issues raised in Camex's Motion. (Unofficial Tr. at 14:07:52-14:08:08.) Discovery closed on June 13, 2011. (ECF No. 51.) The Court heard oral argument on the Motion on June 30, 2011 and took the matter under advisement. (ECF No. 53.) At oral argument, counsel for Plaintiff was unable to explain or provide any reason why Beyer did not file this matter in Wyoming. (Unofficial Tr. at 14:28:32-14:29:18.)

## STANDARD OF REVIEW

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides that a defendant may move to dismiss a complaint for "lack of personal jurisdiction." The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further. The Court will accept the well-pled allegations of the complaint as true to determine whether the plaintiff has made a prima facie showing that personal jurisdiction exists. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Any factual conflicts must be resolved in the plaintiff's favor. *Wentz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). To defeat the plaintiff's prima facie case, a defendant "must present a compelling case demonstrating

'that the presence of some other considerations would render jurisdiction unreasonable.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

## DISCUSSION

To determine whether a court has personal jurisdiction in a diversity case such as this one, a plaintiff must show (1) that jurisdiction is proper under the forum state's long-arm statute; and (2) that exercise of personal jurisdiction over the defendant comports with due process. *See Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir. 1990). To comport with due process, the defendant foreign corporation must have minimum contacts with the forum state such that maintenance of the lawsuit would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

In Colorado, the state's long arm statute "confers the maximum jurisdiction permissible consistent with the Due Process Clause." *Dudnikov*, 514 F.3d at 1070 (quoting *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005)). Thus, the Court need only address the constitutional question of whether the exercise of personal jurisdiction over Camex comports with due process.

To determine whether personal jurisdiction is proper under the Constitution, a court first looks to find minimum contacts within the forum state. *See Int'l Shoe Co.*, 326 U.S. at 316. The focus is on protecting the liberty interest in not being subject to "the binding judgments of a forum with which [the defendant] has established no meaningful contacts, ties, or relations." *Burger King*, 471 U.S. at 472 (quotations and citation

omitted). If minimum contacts are established, the court then determines whether exercise of personal jurisdiction would be reasonable. *Int'l Shoe Co.*, 326 U.S. at 316. The standard of reasonableness is measured by whether an exercise of jurisdiction would offend "traditional notions of fair play and substantial justice." *Id.*

"[T]he question of whether a non-resident defendant has the requisite minimum contacts with the forum state to establish in personam jurisdiction must be decided on the particular facts of each case." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004) (internal quotation marks omitted). "[T]he individual nature of the [personal jurisdiction] determination makes it extremely difficult to compare precisely the unique circumstances and outcomes of different cases." *Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1273 (Colo. 2002).

The minimum contacts analysis differs depending on whether it arises from specific or general jurisdiction. *OMI Holdings*, 149 F.3d at 1090-91. A court may assert specific jurisdiction "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472 (internal citations and quotations omitted). General jurisdiction, on the other hand, "arises when a defendant maintains continuous and systematic contacts with the forum state even when the cause of action has no relation to those contacts." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

Here, Camex asserts that it is not subject to this Court's jurisdiction because: (1) the sale of the bed truck involved in the incident occurred in Wyoming and therefore Beyer's claims against Camex do not arise from Camex's contacts with Colorado such

that the Court could assert specific jurisdiction; (2) Camex did not avail itself of the privileges of conducting business in Colorado; and (3) Camex does not have "continuous and systematic contacts" with Colorado such that the Court could assert general personal jurisdiction. (ECF No. 3 at ¶¶ 15, 16.) Beyer argues that the Court can assert either specific or general jurisdiction over Camex based on the reasonable foreseeability that the bed truck would be used in Colorado and Camex's business contacts in Colorado. (ECF No. 12 at 5-6.) The Court therefore addresses Camex's contacts with Colorado under the specific and general jurisdiction prongs.

**A.    Specific Jurisdiction**

A court may exercise specific jurisdiction when the defendant has purposefully directed its activities to the forum state and where the underlying alleged injury arises out of or relates to the defendant's activities in the forum state. *Found. for Knowledge in Dev. v. Interactive Design*, 234 P.3d 673, 678 (Colo. 2010) (quoting *Burger King*, 471 U.S. at 472). This is a two prong analysis, where the Court must determine (1) "whether the defendant purposefully availed himself of the privilege of conducting business in the forum state;" and (2) "whether the litigation 'arises out of' the defendant's forum-related contacts." *Id.* (quoting *Archangel*, 123 P.3d at 1194). Within this analysis, the Court considers the "quantity *and* quality" of Defendant's contacts in Colorado. *OMI Holdings*, 149 F.3d at 1092 (emphasis in original).

The specific jurisdiction analysis requires that a defendant should have minimum contacts with the forum state in order to "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Further, it must be "actions by the defendant *himself* that create a 'substantial connection' with

the forum state." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987) (emphasis in original) (citation omitted).  A defendant should not be "subject to the laws of a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person." *AST Sports Sci., Inc. v. CLF Distrib., Ltd.*, 514 F.3d 1054, 1058 (10th Cir. 2008).  "[C]onduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, [and] advertising in the forum State . . . ."  *Id.* at 112.  " '[F]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."  *World-Wide Volkswagen*, 444 U.S. at 296.

The Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.  *Id.* at 297.  Thus, a defendant must have affirmatively placed a product into a market for personal jurisdiction to comport with due process.  *See Asahi*, 480 U.S. at 112-113 (held no purposeful availment where defendant sold valves that were used in tire tubes in California but where defendant did no business in California, had no office, and did not otherwise solicit business in California); *World-Wide Volkswagen*, 444 U.S. at 295-298 (held no purposeful availment where plaintiff purchased automobile in New York but was injured in Oklahoma, reasoning that although an automobile is mobile, knowledge that it may travel to another state is not enough without an affirmative action of the defendant to get it to the other state); *Bell Helicopter Textron, Inc. v. Heliquest Int'l, Ltd.*, 385 F.3d 1291, 1298 (10th Cir. 2004) (held no purposeful availment where helicopter

was leased in Canada from New Mexico defendant and injury occurred in Utah, reasoning that the mere possibility that helicopter could be taken to Utah is too remote); *Benton*, 375 F.3d at 1076-77 (finding purposeful availment where defendant entered into a contract with a Colorado resident, sent employees to Colorado to conduct due diligence, sent significant correspondence to plaintiff in Colorado, and committed a tortious act in Colorado); *Premier Corp. v. Newsom*, 620 F.2d 219, 222 (10th Cir. 1980) (held no purposeful availment where plaintiff and defendants were not residents of Colorado and relevant contracts regarding purchase and sale of cattle formed outside of Colorado but injury occurred in Colorado, reasoning because plaintiff took cattle to Colorado without knowledge or direction of defendants, such conduct did not create sufficient minimum contacts); *Watson v. Dillon Companies, Inc.*, 615 F. Supp. 2d 1221, 1226 (D. Colo. 2009) (finding purposeful availment where defendant sold product to a distributor with the awareness that the distributor was marketing its final product in the forum state).

With respect to the purposeful availment prong, Beyer argues that because Xtreme had oil drilling rigs in Wyoming, Colorado, and Canada at the time it purchased the bed truck from Camex, and because the bed truck was built for the specific purpose of moving drilling rigs, Camex should have foreseen that the bed truck would be used in Colorado. (ECF No. 12 at 7.) The Court notes that at the time of purchase, Xtreme was also soliciting bids to move oil drilling rigs for other companies. (ECF No. 12-1 at 3 ¶ 4.) Although Camex sold the bed truck to Xtreme for the purpose of moving drilling rigs, it did not know nor could it definitively foresee that Xtreme would use the truck anywhere other than in Wyoming, where it was delivered. (ECF No. 3-1 at ¶ 3.) Even if Camex

were to have foreseen that the bed truck could be used in Colorado, the truck could also have stayed in Wyoming, gone to Canada, or to any other state where Xtreme contracted in the future to move a drilling rig.  Foreseeability, alone, is not enough to justify the Court asserting personal jurisdiction over Camex.  *See World-Wide Volkswagen*, 444 U.S. at 295.

Here, similar to *Bell Helicopter* and *Premier*, it was the action of an unrelated third party – Xtreme – and not Defendant Camex, that caused the bed truck to be located in Colorado.  *Bell Helicopter*, 385 F.3d at 1298 (plaintiff took helicopter from Canada to Utah); *Premier*, 620 F.2d 222 (plaintiff took cattle to Colorado).  This unilateral activity of Xtreme does not satisfy the requirement that Camex have sufficient minimum contacts with Colorado so as to comport with due process.  *See Premier*, 620 F.2d at 223 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

The Court further looks at Camex's other contacts in Colorado.  Camex has sold oilfield equipment to 10 customers in Colorado between 2007 and 2010.  (ECF No. 3-1 at ¶ 6.)  However, Camex's sales in Colorado were the result of those customers taking the initiative to solicit Camex, and not the other way around.  (*Id.*)  Camex does not have a presence in Colorado, and does not solicit customers through direct marketing in Colorado.  (*Id.* at ¶¶ 5-6.)  Further, Camex employees have not traveled to Colorado to solicit business or attend marketing events or trade shows.  (*Id.* at ¶ 6.)  Only 2 percent of Camex's global sales came from Colorado during the relevant 2007-2010 time frame.  (*Id.*)

As the Supreme Court held in *World-Wide Volkswagen*, "if the sale of a product of a manufacturer . . .arises from the efforts of the manufacturer . . . to serve directly or

10

indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others." 444 U.S. at 297. Camex is in the business of providing equipment to the oil field industry, and Beyer's injuries resulted on an oil field in Colorado. (ECF No. 1-1 at ¶¶ 3, 6.) However, there is a market for oil field equipment anywhere there is drilling for oil. This market is not limited to Colorado and Wyoming. Were this Court to assert personal jurisdiction on Camex because of Xtreme's conduct in moving the bed truck to Colorado, there would conceivably be no limit on any court asserting personal jurisdiction over Camex wherever its products ultimately came to be located. *See World-Wide Volkswagen*, 444 U.S. at 296 ("Every seller of chattels would in effect appoint the chattel his agent for service of process. His amenability to suit would travel with the chattel.")

The Court finds that the evidence of record does not show that Camex had sufficient minimum contacts with Colorado such that Camex would reasonably anticipate that it would be haled into court for an injury arising out of the sale of the bed truck in Wyoming.

Because the Court finds that Camex did not purposefully directs its activities at Colorado, it need not address whether the injury arose out of Camex's contacts with Colorado. *See Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996); *Ajjarapu v. AE Biofuels, Inc.*, 728 F. Supp. 2d 1154, 1162 (D. Colo. 2010). The Court therefore holds that exercising specific jurisdiction over Camex would be improper under the facts of this case.

**B.     General Jurisdiction**

As Beyer contends, a court may also exercise general jurisdiction over a putative defendant when that entity's business contacts with the forum state are "continuous and systematic." *Helicopteros*, 466 U.S. at 414-16. "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." *OMI Holdings*, 149 F.3d at 1091 (citation omitted); *see also Helicopteros*, 466 U.S. at 418 (holding $4 million worth of purchases over 7 years does not rise to a finding of personal jurisdiction); *Benton*, 375 F.3d at 1081 (holding two dozen transactions over 8 years does not rise to a finding of personal jurisdiction); *Electronic Solutions, Inc. v. MechoShade Systems, Inc.*, 2011 WL 1756222 *5 (D. Colo. May 9, 2011) (unpublished) (holding 1.5 percent of annual revenue over two years and distributing product through 5 distributors, without more, does not rise to a finding of personal jurisdiction).

As noted earlier, Beyer argues that between 2007 and 2010, Camex (1) has had 10 customers in Colorado; (2) has sold approximately $3.5 million worth of equipment in Colorado; and (3) has actively marketed products to its existing Colorado customers. (ECF No. 12 at 10-11.) Beyer therefore asserts that Camex has "continuous and systematic" contacts with Colorado such that asserting general jurisdiction comports with due process. (ECF No. 12 at 11.) However, Camex's Colorado customers took the initiative in making the first contact with Camex after finding Camex on the internet or through alternate means. (*see* Unofficial Tr. at 14:10:22-14:11:36.) Camex did not solicit Colorado customers through direct marketing. (ECF No. 3-1 at ¶ 6.)

Camex asserts that it (1) does not maintain offices or agents in Colorado; (2) does not maintain a phone listing or bank account in Colorado;(3) does not own real or personal property in Colorado; (4) Camex employees have never traveled to Colorado to solicit business or attend a trade show; and (5) sales in Colorado account for a minimal percentage of total global sales. (*Id.* at ¶¶ 5-6.) Therefore, Camex asserts that it should not be subject to personal jurisdiction in this Court on the basis of general jurisdiction. (ECF No. 3 at ¶ 16.)

The Court finds that the evidence of record in this case does not establish that Camex had such continuous and systematic business contacts with Colorado so as to allow this Court to assert personal jurisdiction over Camex on the basis of general jurisdiction. Camex does not have any official presence in Colorado. (ECF No. 3-1 at ¶ 5.) Further, between 2007 and 2010, Camex has only sold 2 percent of its total global sales to Colorado customers. (ECF No. 3-1 at ¶ 6.) Camex does not solicit new customers in Colorado; instead, its 10 current customers sought out Camex's services through the internet. (ECF No. 3-1 at ¶ 6; Unofficial Tr. at 14:10:22 - 14:11:36.) While Camex does directly market its products to Colorado customers once they make a purchase, marketing to just 10 customers in the state is insufficient for the Court to find that Camex had continuous and systematic contacts with Colorado during the three-year period at issue here. Given that Camex does not have the requisite continuous and systematic contacts with Colorado, the Court concludes it may not exercise general jurisdiction over Camex in this case.

## CONCLUSION

It is therefore ORDERED that Defendant's Motion to Quash Service of Process and to Dismiss for a Lack of Personal Jurisdiction, ECF No. 3, is hereby GRANTED. The complaint and this action are hereby DISMISSED without prejudice.

Dated this 8th day of July, 2011.

BY THE COURT:

William J. Martinez
United States District Judge